PEOPLE ex rel. BALLARD v. MOSS et al.

(Supreme Court, Appellate Division, First Department. March 24, 1899.)

1. POLICE OFFICER—SUSPENSION FOR MISCONDUCT—HEARING.
    A police officer is not prejudiced by the failure to swear the witnesses against him on the hearing of charges against him by the board of police commissioners for using disrespectful language to his superior officer, where he admits the use of the language complained of.

2. SAME—"SUPERIOR OFFICER."
    A roundsman is the superior officer of patrolmen, within the rule prohibiting the latter from using disrespectful language to their superior officers.

3. SAME—HEARING—UNSWORN WITNESSES.
    A patrolman cannot complain of the failure to swear his witnesses on the investigation by the board of police commissioners of charges against him, where their testimony received the same consideration as if given under oath.

On rehearing. Affirmed.

For prior report, see 54 N. Y. Supp. 262.

Reargued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

BARRETT, J. At the November term of last year this case was argued and decided. 34 App. Div. 475, 54 N. Y. Supp. 262. It was then held that, as the return failed affirmatively to show that the witnesses were not sworn, the Kasschau Case, 155 N. Y. 40, 49 N. E. 257, was inapplicable, and the presumption of legal action on the part of public officials attached. Subsequently the relator moved for a rehearing, and upon that motion he presented facts which induced this court to give him an opportunity to move in the court below for an amended return. Our direction was that, should the motion be granted, the case would be reheard upon the amended return. The case is now before us upon such rehearing, but, in looking into the record, we find no amended return. The case is in the same condition as when it was previously here, with the addition of an amended petition, and what is styled, and in fact is, an answer to such amended petition. The original return to the writ, and the further return which was made in May, 1898, upon which our original decision was made, remain as they were, unchanged and without amendment. It follows, therefore, that the relator has not taken advantage of the favor extended to him, and that the case made by the record is the same as that previously passed upon. If, however, we should treat the answer to the amended petition as an amended return to the writ, we see no reason to recede from our original conclusion. It is true that the respondents do not specifically deny the allegations of the amended petition to the effect that but two of the witnesses were sworn, and that the others testified without the sanction of an oath or affirmation. They state, however, that they were not in office at the time of the relator's trial, and that all the information which they have or possess on the subject is derived from the records of the department of which they are now the head. These records show, they allege, that Roundsman Patrick Curran and the relator were sworn, but fail to disclose whether the other witnesses were or were not sworn. We need not consider whether this would have been sufficient, had the respondents been required to make an amended return upon the specific subject. It is enough for our present purpose to say that this answer discloses the actual facts, and that these facts plainly indicate that the relator was in no wise prejudiced by the failure to swear the witnesses other than Roundsman Patrick Curran and the relator. If such prejudice were apparent, we might consider the propriety of again indulging the relator, and giving him a further opportunity to procure an amended return to the writ. The reverse, however, is apparent, as a brief reference to the charges and the evidence will show. The relator was charged, first, with conduct unbecoming an officer. The specification was that he used disrespectful language to his superior officer, Roundsman Patrick Curran. Substantial proof of this charge and specification emanated from the relator himself. He tells us just what he said in the station

house in the presence of Acting Sergeant Hayes and Roundsman
Curran. This is his own testimony:

"The sergeant wanted to know what the matter was, and I said, 'Rounds-
man will tell you what for;' and the roundsman said, 'I have brought this
man in off post, because he refused to patrol his post.' I said, 'Is that what
you brought me in off post for?' He didn't pay any attention. I turned to
the roundsman and said: 'Roundsman, you lie. That is not what you
brought me in off post for.'"

This fully supported both charge and specification.

It is contended that the roundsman was not the relator's superior
officer. We need not consider the roundsman's precise function.
He certainly occupied a superior position to the relator, and was
his superior within the spirit of the rule. Such language as the re-
lator admits that he thus used in the presence of the acting sergeant
was enough to justify the board in disciplining him. It was disre-
spectful, and it savored of rebellion and insubordination. An offi-
cer who cannot control himself, and submit respectfully to a disagree-
able exercise of lawful authority, is not fit to be on the force. It is
apparent, therefore, that the relator was not prejudiced by the tes-
timony of Acting Sergeant Hayes. The latter was not sworn, but
his testimony was limited to what occurred in the station house;
and, although he varied somewhat the expression which the relator
said that he used, the substance of it was the same. The specifica-
tion did not particularize the words used by the relator. It simply
specified "disrespectful language." It was immaterial, therefore,
whether the disrespectful language was more or less emphasized.
Disrespectful language was used, according to the relator's own
confession, and that sufficed to convict.

As to the charge of neglect of duty, the only witness for the prose-
cution was the roundsman, and he was sworn. At first he was not
sworn, but upon his cross-examination the relator's counsel asked to
have him sworn, and thereupon the oath was administered. The
witness was then asked whether he desired to swear to everything
he had already said, and he replied that he did, except as to the
time when the relator was off duty, which was, he added, about
12:20 a. m. instead of 1:20 a. m. All the other witnesses as to the
second charge, namely, neglect of duty, were called by the relator,
and they testified on his behalf. He certainly cannot complain that
his own witnesses were not sworn. They received the same consid-
eration as if they had been sworn. It thus appears that the relator
was, upon his own testimony, convicted of using disrespectful lan-
guage to the roundsman in the presence of the acting sergeant, and
also, upon sworn testimony, convicted of neglect of duty. In no
aspect of the case was he prejudiced by the failure to swear either
the acting sergeant or his own witnesses. Upon the merits of the
charge of neglecting duty, we think the judgment of the commis-
sioners was amply supported by credible testimony, which was for-
tified by the probabilities of the case.

The writ should therefore be quashed, and the proceedings af-
firmed, with costs. All concur.