CLAPPER v. RACE.

(Otsego County Court. February 15, 1910.)

1. EVIDENCE (§ 543*)—OPINION EVIDENCE—VALUE OF COW—QUALIFICATION OF WITNESS.

   A witness testified that a cow, the value of which was sued for, was four years old; that he had known of his neighbors buying and selling cattle, and knew the value of this cow; that he was a farmer, and had bought cows, and knew the value of cows in his neighborhood. *Held*, that this qualified him to testify as to her value.

   [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2358; Dec. Dig. § 543.*]

2. APPEAL AND ERROR (§ 1056*)—REVIEW—RULINGS ON EVIDENCE.

   Where illegal evidence has been admitted, it will be carefully scrutinized to ascertain whether it may have affected the result; but the rejection of competent evidence is necessarily fatal on appeal, as the court cannot determine what effect the lack of it may have had on the result.

   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4187–4193; Dec. Dig. § 1056.*]

3. **SHERIFFS AND CONSTABLES (§ 138\*)—LIABILITY—WRONGFUL LEVY—PROPERTY OF THIRD PERSONS—ACTION—SUFFICIENCY OF EVIDENCE.**

In an action against a constable to recover the value of a cow taken by him on execution against plaintiff's husband, evidence *held* insufficient to sustain a verdict for defendant on the ground that plaintiff was not the owner of the cow.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig. § 295; Dec. Dig. § 138.\*]

4. **JUSTICES OF THE PEACE (§ 183\*)—REVIEW OF PROCEEDINGS—PRESUMPTIONS.**

In reviewing proceedings before a justice, courts will regard them with marked liberality in furtherance of justice, and if possible will sustain them by every reasonable intendment.

[Ed. Note.—For other cases, see Justices of the Peace, Cent. Dig. §§ 705–710; Dec. Dig. § 183.\*]

5. **JUSTICES OF THE PEACE (§ 183\*)—APPEAL FROM JUSTICE COURT—REVIEW—TECHNICAL ERRORS OR DEFECTS.**

It is not only the correct rule that an appellate court must render judgment according to the justice of the case, without regard to technical errors or defects not affecting the merits, but in appeals from justices' courts such rule is mandatory, in view of the express requirements of Code Civ. Proc. § 3063.

[Ed. Note.—For other cases, see Justices of the Peace, Cent. Dig. § 712; Dec. Dig. § 183.\*]

Appeal from Justice Court.

Action by Sarah Ann Clapper against Charles Race, in justice court. From a judgment for defendant, plaintiff appeals. Reversed.

Holmes & Waterman, for appellant.

James P. Friery, for respondent.

KELLOGG, J. This is an appeal from a judgment for costs, rendered in justice's court on the verdict of a jury of no cause of action, in favor of the defendant. The action was brought to recover the value of a cow, which plaintiff claims was her property, and which was taken from her possession by the defendant. It appears that the defendant at the time was acting as a constable, and that the cow was levied upon and sold by him by virtue of an execution which had been issued in favor of one Egbert Snyder and against Anson Clapper, the husband of plaintiff.

It is contended by the appellant that this judgment should be reversed for two reasons: (1) That the justice before whom the case was tried refused to permit one of plaintiff's witnesses to testify as to the value of the cow after having been first duly qualified to give such evidence; (2) that the verdict of the jury, of no cause of action, was against the weight of evidence.

After the witness Anson Clapper had testified that the cow was four years old, that he had known of his neighbors buying and selling cattle, knew the value of this cow, that he was a farmer, had bought cows and knew the value of cows in his neighborhood, the justice refused to allow the witness to answer any one of the three questions wherein he was asked to state the value of this cow. The plaintiff was clearly entitled to this evidence, in seeking to establish her cause of action. It was not only important for the plaintiff to establish the fact that she was the owner of the cow, but that the cow had some value, and what

that value was. The refusal to permit the witness in question to give testimony upon the question of value left the plaintiff with only the evidence of her witness Wilsey in relation thereto, and which was substantially as follows:

"Q. What was the value of this cow the last of October, 1909? A. I don't know. Q. Was she worth $25? A. She might possibly be, at the rate cows were selling. Q. Was she worth $20. A. She ought to be; yes."

On cross-examination the witness qualified the above evidence as follows:

"I do not wish to swear positively that this cow was worth $25. I would not swear positively that she was worth $20."

In view of such evasive, uncertain, and unreliable evidence on the question of value, the jury was certainly left to surmise and speculate in relation thereto, and they might have been thoroughly impressed with the proposition which was pointedly stated in defendant's motion for a nonsuit at the close of plaintiff's evidence, to wit:

"That plaintiff had failed to prove facts sufficient to constitute a cause of action, on the further ground that plaintiff has entirely failed to prove that the cow alleged to have been converted by this defendant was of any value."

The judgment must be reversed, for the very obvious error committed by the justice below in excluding the evidence of the witness Clapper, above mentioned. The plaintiff was thereby prevented from establishing in a clear and convincing manner a material point in her case. In a case where illegal evidence has been admitted, it will be scrutinized carefully for the purpose of ascertaining whether it may have affected the result; but in case of the rejection of legal and proper evidence a different rule prevails, for the reason that a court is not in a position to determine what effect the rejected evidence may have had on the result, or the lack of it, in the minds of the jurors. The rejection, therefore, of legal and competent evidence, is necessarily a fatal objection on appeal. Eakin v. Brown, 1 E. D. Smith, 37; Kendall v. Gray, 2 Hilt. 301; Bissell v. Marshal, 6 Johns. 100; Starbird v. Barrons, 43 N. Y. 200; Nasanowitz v. Hanf, 17 Misc. Rep. 160, 39 N. Y. Supp. 327.

The plaintiff testified that she was the owner of the cow, "that she bought the cow with her own money, that her husband was not the owner of a cow at that time, and that the $5 paid down on the cow at the time of the purchase she borrowed of her daughter." "Paid five dollars in money, and dug potatoes." "I paid for the cow." The witness Harvey Wilsey testified that he sold the cow to plaintiff in September, 1909, for $25, at the time he went to the residence of plaintiff and saw her. "I saw," he says, "Jennie (meaning plaintiff's daughter) have the $5 that day, which afterwards came in my possession."

While the evidence of the witness Wilsey seems vacillating and uncertain, with an apparent intent on his part to give evidence which would give satisfaction to both sides, his positive statement that he sold the cow in question to the plaintiff, in connection with the evidence of the plaintiff that the cow was her cow, remains absolutely uncontradicted in the case. The answer is a general denial, and alleges that plaintiff's husband, Anson Clapper, was the owner of the cow; but

there is no evidence in the case to substantiate such claim, or that he ever exercised any act of ownership, except such as may be inferred from the fact that he went after the cow, and that he had some conversation with Wilsey in relation to the cow prior to the purchase, and assisted the plaintiff and daughter in digging the potatoes.

The verdict of the jury, then, was clearly against the weight of evidence, and the uncontradicted evidence in the case, and the only possible reason that can be given for the verdict of the jury is that they must have arrived at the conclusion that the plaintiff had failed to prove value.

It is strongly urged by the learned counsel for the respondent that the plaintiff consented that the constable might take the cow, when she used an expression which was apparently directed to the constable, "Take the cow, and go to hell." Without further comment as to how far the defendant complied with her request, it appears from the evidence of the defendant that he went to the barn, brought the cow out, gave the rope to one Welch, and told him to hold her; that he read the execution to Anson Clapper, but that the plaintiff was not present; and that he had no conversation with her.

There is no evidence that the plaintiff was at any time informed as to what the defendant was there for, or for what reason the cow was being taken, and in the absence of any explanation to the plaintiff as to why the sole kine of her household, which included herself and her nine children, was out in the road, and about to be led away, may well have caused her welling thoughts of "chill penury" to have repressed "her noble rage," even "the genial current of her soul" to become frozen, and her sharp tongue to cleave unto the roof of her mouth, instead of giving vent to such explosive and violent language; but I am not able to construe her words in the respect mentioned, under all of the circumstances, into a consent that the cow might be sold on an execution which had been issued to pay the debt of her husband.

It is beyond question the uniform practice of the courts, in reviewing the proceedings had before a justice of the peace, to regard them with marked indulgence and liberality in furtherance of the ends of justice, and if possible to sustain them by every reasonable and warrantable intendment. Schoonmaker v. Spencer, 54 N. Y. 366; Sebring v. Stryker, 10 Misc. Rep. 289, 30 N. Y. Supp. 1053; Knight v. Wilson, 55 Hun, 559, 9 N. Y. Supp. 20; Beecher v. Kendall, 14 Hun, 327–329. A just and proper administration of the law at all times requires an appellate court to render judgment according to the justice of the case, without regard to technical errors or defects which do not affect the merits. This is not only the correct rule, but is mandatory. Code Civ. Proc. § 3063.

After a careful consideration, however, of all of the evidence in the case, and the briefs of counsel, I am forced to the conclusion that for the reasons stated the judgment herein must be reversed, with costs.

Judgment reversed, with costs.